**MARWAIS STEEL COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

No. 19068.

United States Court of Appeals
Ninth Circuit.

Dec. 20, 1965.

Robert L. Farmer, James H. Knecht, Jr., of Forster, Gemmill & Farmer, Los Angeles, Cal., for the petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, Jr.,

Fred R. Becker, Michael I. Smith, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS, MERRILL and DUNIWAY, Circuit Judges.

CHAMBERS, Circuit Judge:

Wilmington Metal Manufacturing Company, wholly owned by Marwais Steel Company, lived at the whim of the latter.

Marwais organized Wilmington in 1951 to do a special wheel manufacturing job. The latter company was dissolved at the will of Marwais in August, 1956. Wilmington was never successful in business and existed on loans from Marwais which amounted to $57,857.35 on the eve of dissolution. Just before dissolution of Wilmington, Marwais, by a board of directors resolution, forgave the whole amount. At dissolution, Wilmington surrendered its cash assets of $110.02 to Marwais.

Marwais claimed as a deduction on its tax return for its taxable year ending January 31, 1957, $23,967.52.[1] Then it carried over to the following year ending January 31, 1958, as a deduction, $35,-807.35. These represented accumulated net operating losses of Wilmington of $59,774.87, approximately the amount of the forgiven debt from Wilmington to Marwais: $57,857.35.

Except for the special circumstances here, the commissioner would not question Marwais' right to take advantage of its subsidiary's losses in the manner it did. The special circumstances are that Marwais had already for its taxable year ending January 31, 1953, put into its bad debt reserve the figure of $22,000.00 because of the unadjudicated bad insolvency of Wilmington. For its tax year ending January 31, 1957, Marwais added to its bad debt reserve $35,122.35, approximately the balance of Wilmington's debt to Marwais.[2] The two amounts were

---

1. No consolidated returns of a parent and wholly owned subsidiary are involved here. If the companies were ever eligible to elect such an option, it was never done.

2. It will be noted that the reserve of Marwais for Wilmington's bad debts (the prior deductions) was $57,122.35, the debt forgiven was $57,857.35, and the net op-

used as deductions for business bad debts on Marwais' returns. The commissioner says that Marwais cannot again get the advantage of the bad debt in the amount of $57,122.35 so far as it is represented in the operating loss carry-over acquired by Marwais out of the liquidation of Wilmington. Disallowance of the deduction results in an income tax deficiency for the two years in question of about $22,-500.00. The tax court ruled in favor of commissioner and we affirm. We shall not reiterate here the rather long and complete statement of the case found in Marwais Steel Co. v. Commissioner, 38 T.C. 633.

Marwais demonstrates pretty well that from beginning to end each step in the family relations of the two corporations was dominated by a business purpose. For example, the indebtedness was forgiven Wilmington to avoid an otherwise bad cloud in credit reports on Marwais. Had it not been done, Marwais would have been branded with having managed its business offspring into an insolvent end.

Marwais bases its case for deduction of the Wilmington loss carry-over on its interpretation of Sections 332 and 381 of the Internal Revenue Code of 1954.[3] It is evident that if the debt had not been forgiven, under Section 332 the position of Marwais would have no logical validity. On its face, the argument of Marwais is very difficult to answer. It seems near perfect in logic. But in human experience, most logic can be carried only so far. For example, by the literal terms of the Fifth Amendment, one should not have to file income tax returns because he might incriminate himself. But they must be filed.

We conclude, as the tax court did, plausible as the position of Marwais is, there is a message in Ilfeld Co. v. Hernandez, Collector, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127, another double tax deduction disallowed. We follow taxpayer's argument that part of what was there said was dicta. And, of course, the sequence of facts there is reversed from what we have here. If what it said there

---

erating loss carry-over of Wilmington later claimed by Marwais was $59,774.87. We assume the government allows the difference between $59,774.87 and $57,-122.35, $2,652.52, as a deduction for Marwais, it not having been previously deducted by Marwais.

3. The sections, in part, provide:
"I.R.C. § 332:
"(a) General rule.—No gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation.
"(b) Liquidations to which section applies.—For purposes of subsection (a), a distribution shall be considered to be in complete liquidation only if—
* * *
(2) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock shall be considered an adoption of a

plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution; * * *
"I.R.C. § 381:
"(a) General rule.—In the case of the acquisition of assets of a corporation by another corporation—
(1) in a distribution to such other corporation to which section 332 (relating to liquidations of subsidiaries) applies, except in a case in which the basis of the assets distributed is determined under section 334(b) (2);
* * *
the acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in subsection (c) of the distributor or transferor corporation, subject to the conditions and limitations specified in subsections (b) and (c).
* * *
(c) Items of the distributor or transferor corporation.—The items referred to in subsection (a) are:
(1) Net operating loss carryovers.— The net operating loss carryovers determined under section 172, subject to the following conditions and limitations:
* * * *"

was dicta, we believe that it is dicta the court will follow in cases having any similarity at all on double deductions for a single economic loss.[4]

The decision is affirmed.

4. Cf. McLaughlin v. Pacific Lumber Co., 293 U.S. 351, 55 S.Ct. 219, 79 L.Ed. 423, and Spokane Dry Goods Co. v. Commissioner, 9 Cir., 125 F.2d 865.