ESTATE OF HUGH GORDON MILLER, DECEASED, ALLEN GORDON MILLER, ERWIN SCHROFF, AND HELEN T. IVES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1532–66. Filed June 12, 1967.

*James E. Bennet, Jr.,* for the petitioners.
*Julius M. Jacobs,* for the respondent.

#### OPINION

KERN, *Judge:* Respondent determined a deficiency in the Federal estate tax of the Estate of Hugh Gordon Miller in the amount of $87,199.90. Decedent, who was over 80 years of age at the time of his wife's death, acquired under her will an income interest in trust assets for his life, and a general testamentary power of appointment over the remainder. This will provided that if he did not exercise this power, the remainder should go to a charitable organization named therein subject to a life interest in the trust income to their son. Decedent took the steps necessary to make available to his wife's estate under section 2055(b)(2), I.R.C. 1954, a charitable deduction in an amount equal to the value of such remainder interest by executing an affidavit of his intent to exercise the power in favor of the named charitable organization subject to a life interest in the trust income to the son, and by so exercising it in his will which became effective upon his death a little over 2 years later. His wife's estate took such a charitable deduction under section 2055(b)(2), I.R.C. 1954. The question presented is whether under these circumstances any part of the trust assets is eligible as a charitable deduction by decedent's estate under section 2055(b)(1). If the charitable deduction is not allowable to decedent's

estate, we must also decide whether the assets are properly includable in decedent's gross estate.

This case was submitted on a complete stipulation of facts pursuant to Rule 30. We find the facts to be as stipulated. The stipulation and the attached exhibits are incorporated by this reference.

An estate tax return for petitioner was filed with the district director of internal revenue at Camden, N.J.

Hugh Gordon Miller (hereinafter sometimes referred to as Hugh) died a resident of Monmouth County, N.J., on August 1, 1962. Decedent's will was admitted to probate in the Surrogate's Court of Monmouth County, N.J.

Decedent's wife, Edna Allen Miller (hereinafter sometimes referred to as Edna), predeceased decedent. Under her will decedent acquired a life interest in the net income from and a general testamentary power of appointment over assets in a trust created by her.

The pertinent part of Edna's will reads as follows:

SEVENTH: All the rest, residue and remainder of my property, real, personal or mixed and wherever situate, now owned or hereafter acquired, I give, devise and bequeath to my Trustees hereinafter named, IN TRUST, NEVERTHELESS, for the following uses and purposes: To divide the same into two shares, one equal to forty percent (40%) of said residue and the other equal to sixty percent (60%) thereof, and to dispose of the income and principal of said shares as follows:

(a) To hold, manage, invest and reinvest the forty percent (40%) share; to collect the income therefrom and after deducting all necessary expenses in connection therewith to pay the net income therefrom to my said husband during his life in quarter annual installments. My husband shall have the power by his last will and testament to appoint in all events the whole or any part of the principal or income of this said share then remaining in the hands of my said Trustees to or in favor of his estate, free of any trust, or to any person or persons, either outright or in trust, for the benefit of any one. Upon the death of my husband, the then remaining principal and income of this said trust under my will, which may not have been appointed or received by my husband, shall be continued to be held in trust by my said Trustees; to hold, manage, invest and reinvest the same, collect the income therefrom, and after deducting all necessary expenses in connection therewith, to pay the income therefrom to my son, ALLEN GORDON MILLER during his life, in quarter annual installments, and upon his death or the death of my said husband, Hugh Gordon Miller, should my said son have predeceased him, to transfer, pay over and distribute the principal of said share to The Edna Allen Miller Foundation.

Decedent exercised this power of appointment in paragraph Seventh of his will as follows:

SEVENTH: Under the provisions of Article SEVENTH (a) of the Will of my wife, Edna Allen Miller, there is conferred upon me a power to appoint by my Last Will and Testament the whole or any part of the principal or income of the trust under said paragraph SEVENTH (a) of said Will. In the exercise of said power, I appoint as follows: I direct that the Trustees under the Will of my said wife continue to hold the principal of said trust and to administer, invest and

reinvest the same, and to pay or apply the net income therefrom to my son, ALLEN GORDON MILLER, for life, and upon his death to transfer, pay over and distribute the principal of said trust to The Edna Allen Miller Foundation. In administering said trust, I direct that such Trustees shall continue to have and possess all of the powers, authorities and directions given to them by the Will of my said Wife.

This exercise was in accordance with, and as stated in decedent's affidavit, sworn to on December 6, 1960, and attached to the Federal estate tax return filed by Edna's estate in the office of the director of internal revenue, Camden, N.J., on May 5, 1963. The affidavit follows:

STATE OF NEW YORK   ⎫ ss
COUNTY OF NEW YORK ⎬
                               ⎭

HUGH GORDON MILLER, being duly sworn, deposes and says:

I am the surviving spouse of Edna Allen Miller who died February 10, 1960, leaving a last will and testament dated May 31, 1957, which was admitted to probate by the Surrogate's Court, County of Monmouth, State of New Jersey. Under said will I am entitled for life to the net income from a trust composed of 40% of the residue of the estate and I have a power of appointment to appoint by my last will and testament the whole or any part of the principal or income of said 40% trust.

The will further provides that upon my death the remaining principal and income of this said trust, which may not have been appointed or received by me, shall be continued to be held in trust to pay the net income therefrom to my son, Allen Gordon Miller, during his life, and upon his death to pay over and distribute the principal of said share to The Edna Allen Miller Foundation. The Edna Allen Miller Foundation is a charitable corporation, organized under the laws of the State of Virginia.

I was eighty-four years of age at the time of my wife's death.

I make this affidavit pursuant to the provisions of Section 2055(b) and hereby declare my intent to exercise by my last will and testament the power of appointment given to me under the terms of the will of my said wife, Edna Allen Miller, and to give the net income from the said 40% of the residue held in trust to my son, Allen Gordon Miller, for life, and the remainder, at his death, to The Edna Allen Miller Foundation.

                                                  (S) HUGH GORDON MILLER

Sworn to before me this
6th day of
December, 1960
    (S) HELEN T. IVES

The parties have agreed that at the time of decedent's death the value of the trust assets was $445,883.49, and the value of the remainder interest therein was $246,627.08.

In the estate tax return herein, the executors of Hugh's estate included in the gross estate the value of the above-mentioned assets over which decedent had a testamentary power of appointment and claimed as a charitable deduction an amount representing the value of the remainder interest in these assets which decedent appointed to the Edna Allen Miller Foundation (hereinafter sometimes re-

ferred to as the foundation). The foundation is a charitable corporation organized under the laws of Virginia which is conceded to have been at all relevant times a qualified exempt organization.

Respondent disallowed the charitable deduction taken by decedent's estate and determined the deficiency herein accordingly. The petition herein contained allegations of error with regard to such disallowance, and also contained an allegation that in the event this Court should decide that the decedent's estate was not entitled to this deduction, then "the value of the power of appointment given to this decedent fixed at a value by the respondent in the sum of $445,883.49 should not be included in the gross estate herein."

Section 2055 of the Internal Revenue Code of 1954 provides that certain transfers for public, charitable, and religious uses shall be deductible from the value of a decedent's gross estate for purposes of the Federal estate tax. Section 2055(b) deals with the deduction of transfers passing under a power of appointment held by a decedent. Paragraph (1) of that section,[1] which was substantially the same as section 812(d) of the Internal Revenue Code of 1939, lays down the general rule with regard to such a deduction "for the purposes of this section" (sec. 2055). At the time of the enactment of the Internal Revenue Code of 1954, this paragraph constituted the whole of section 2055(b). Under its terms decedent's estate would have been entitled to the charitable deduction claimed by it. However, in 1956 Congress amended section 2055(b) by adding before the words "Property includible" the words "(1) General Rule.—" and by adding a second paragraph entitled "Special Rule for Certain Bequests Subject to Power of Appointment." This new paragraph is now section 2055(b) (2) of the Internal Revenue Code and is set out in the margin hereof.[2]

---

[1] SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.
  (b) POWERS OF APPOINTMENT.—
    (1) GENERAL RULE.—Property includible in the decedent's gross estate under section 2041 (relating to powers of appointment) received by a donee described in this section shall, for purposes of this section, be considered a bequest of such decedent.

[2] SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.
  (b) POWERS OF APPOINTMENT.—

    \*        \*        \*        \*        \*        \*        \*

    (2) SPECIAL RULE FOR CERTAIN BEQUESTS SUBJECT TO POWER OF APPOINTMENT.—For purposes of this section, in the case of a bequest in trust, if the surviving spouse of the decedent is entitled for life to all of the net income from the trust and such surviving spouse has a power of appointment over the corpus of such trust exercisable by will in favor of, among others, organizations described in subsection (a)(2), such bequest in trust, reduced by the value of the life estate, shall, to the extent such power is exercised in favor of such organizations, be deemed a transfer to such organizations by the decedent if—
      (A) no part of the corpus of such trust is distributed to a beneficiary during the life of the surviving spouse;
      (B) such surviving spouse was over 80 years of age at the date of the decedent's death;
      (C) such surviving spouse by affidavit executed within one year after the death of the decedent specifies the organizations described in subsection (a)(2) in favor of

Decedent in this case was the surviving spouse of Edna Allen Miller and was over 80 years of age at the time of her death. By virtue of the bequest in trust contained in her will, decedent was given an equitable life estate in certain property coupled with a general power of testamentary appointment relating thereto. Shortly after her death, the decedent, as the surviving spouse of Edna, executed an affidavit signifying his intention to exercise this power by naming a charitable organization to take the remainder interest subject to a life interest in the trust income to the son of Edna and decedent. This was the same disposition as that provided for by Edna's will in the event that decedent failed to exercise his power of appointment. Decedent exercised this power in the manner specified in his affidavit by his will which became effective on his death some 20 months after the execution of the affidavit. These steps were taken by decedent for the purpose, as stated in the affidavit, of enabling Edna's estate to claim a charitable deduction in the amount of the value of the bequest in trust (less the value of the life estates) under section 2055 (b)(2) which provides under certain conditions, all of which were meticulously complied within this case, that such a bequest in trust "shall, to the extent such power is exercised in favor of such organizations, be deemed a transfer to such organizations by the decedent [Edna]." Edna's estate claimed this charitable deduction under section 2055 (b) (2), and we have held in a companion case in which her estate was petitioner that the deduction was allowable. *Estate of Edna Allen Miller*, 48 T.C. 251.

The question now arises in this case whether the estate of Hugh (Edna's surviving spouse) is entitled under section 2055 (b) (1) to a charitable deduction on account of the same transfer of the same property to the same charity which was the basis of the charitable deduction claimed by Edna's estate under section 2055 (b) (2). The executors of Hugh's estate contend that it is entitled to such deduction under the terms of section 2055 (b) (1).

In our opinion it is not entitled to such a deduction.

Section 2055 (b) (2) was enacted as a "Special Rule" long after section 2055 (b) (1), which was entitled "General Rule." It states an exception to the general rule which is applicable to a limited category of cases upon the fulfillment of specific conditions, some of which depend on the affirmative acts of a person whose estate would be entitled to a

---

which he intends to exercise the power of appointment and indicates the amount or proportion each such organization is to receive ; and

(D) the power of appointment is exercised in favor of such organizations and in the amounts or proportions specified in the affidavit required under subparagraph (C). The affidavit referred to in subparagraph (C) shall be attached to the estate tax return of the decedent and shall constitute a sufficient basis for the allowance of the deduction under this paragraph in the first instance subject to a later disallowance of the deduction if the conditions herein specified are not complied with.

charitable deduction were it not for the application of section 2055 (b) (2) thus called into play. Section 2055 (b) (2) deems the transfer to the charitable organization, under the special circumstances enumerated therein, to have been made by the original donor of the power of appointment. Under section 2055 (b) (1), which states the general rule, the transfer would have been considered a bequest from the donee of the power. Both section 2055 (b) (1) and section 2055 (b) (2) by their terms are to be applied "for purposes of this section [sec. 2055]." Since section 2055 (b) (2) was enacted after section 2055 (b) (1) as a "Special Rule" forming an exception to the applicability of the "General Rule" of section 2055 (b) (1) and conflicts with it in that section 2055 (b) (2) provides that in the special cases covered by it the passing of property is deemed to be a transfer by the donor of the power, rather than considered a bequest by the donee of the power, we conclude that section 2055 (b) (2) when properly applied, under the special circumstances enumerated therein, to a transfer pursuant to the exercise of a power of appointment, precludes the application of section 2055 (b) (1) to the same transfer. See *Marian Essenfeld*, 37 T.C. 117, affd. 311 F. 2d 208.

Accordingly, we decide this issue in favor of respondent.

The executors further contend that if we hold, as we have held, that decedent's estate is not entitled to a charitable deduction under section 2055 (b) (1), then no part of the bequest in trust is includable in decedent's gross estate. We reject this argument. The property is includable in decedent's gross estate by reason of the provisions of section 2041.[3] Both sections 2055 (b) (1) and 2055 (b) (2) are limited in their application to section 2055, which provides for deductions from a decedent's gross estate on account of transfers for public, charitable, and religious uses. Although section 2055 (b) (2) deems the property to have passed to the charity from Edna rather than decedent, this "deeming" is clearly stated to be "for the purposes of this section" (sec. 2055). Thus, section 2055 (b) (2) is relevant only to deductions from and not inclusions in the gross estate of a decedent.

*Decision will be entered for the respondent.*

---

[3] Decedent's prior execution of an affidavit indicating his intention to exercise his power of appointment to a named charity did not constitute a disclaimer or renunciation of this power, see *Seubert* v. *Shaughnessy*, 233 F. 2d 134, and petitioner does not contend otherwise.