CARTER v. TAYLOR.

4-9849                                        250 S. W. 2d 122

Opinion delivered June 30, 1952.

*Shaver & Shaver,* for appellant.

*F. M. Duke, Jr.,* and *James Robertson,* for appellee.

WARD, J. This appeal calls on us to decide whether certain language in a will conveys a fee simple title or a fee tail title. The question arose and is presented here on the state of facts, about which there is no dispute, set out below.

On January 16, 1920, appellee, Neuman Taylor, took record title to the lands here involved by deed from one J. T. Lee *et al.* However, Dr. W. D. Horne made one-half of the down payment with the understanding that he would also pay one-half of the balance of the purchase price, and so he was in fact the equitable owner of an undivided one-half interest in said lands. On September 15, 1920, Taylor and his wife executed to Dr. Horne a deed conveying an undivided one-half interest in the said lands. Said deed provided that Dr. Horne was to pay one-half of the indebtedness against the lands, which indebtedness amounted to something over $50,000, as shown by the proof.

Dr. Horne, a widower, died on October 7, 1925, never having paid anything on the above named indebtedness, and left a will which will be discused later. At the time of his death the doctor left surviving him four children,

one of whom, named Attie, later married the said Neuman Taylor, and is one of the appellees. After the death of Dr. Horne, Neuman Taylor, appellee, paid all the indebtedness against the lands, and in 1942 he took deeds from:

1. Louis Durrell Horne, son of Dr. Horne, and wife. They are now living and have no children;

2. Nina H. Moore, daughter of Dr. Horne. She is a widow, has no children, and is now living;

3. Edith H. Hampton, a daughter of Dr. Horne. She is a widow, now living, and has one married daughter who also signed a deed to Neuman Taylor;

4. The three children of appellees. Neuman Taylor took no deed from his wife [daughter of Dr. Horne] because she is a party to this action.

On December 28, 1950, appellees executed a contract to sell said lands to appellants for a consideration of $50,000, part of which was paid down and the balance payable upon approval of title and execution of deed. When the deed was tendered appellants' attorney refused to approve the title. This suit was brought by appellees to enforce specific performance. The lower court held the title good and decreed performance of the sales contract, hence this appeal.

It appears that appellants are not averse to complying with the contract provided the title is good, and also that the objection by appellants' attorney was based on the fear that the will of Dr. Horne conveyed to his children a fee tail title and not a fee simple title. If the will conveyed a fee simple title then appellants acknowledge they are fully protected.

Dr. Horne's original will was executed in 1902, and we copy below the portion that is material here:

"The remainder of my real estate to be kept in trust for my unmarried children until my youngest child, Attie, becomes of age. It to be devided share and share alike between my children, Louis, Nina, Edith and Attie. To my children one and all I entale them property. Would

either of them died without a child there estate to be equally devided between the survivors. Should all of my children die without children .my entire estate real and personal I will to erect an Orphan Home or Asylum for white children, to be built somewhere in Shelby Co., Tenn.''

Dr. Horne executed a codicil to his will which reads as follows:

''Brunswick—March 1st, 1911. This codicil to my will made several years ago. I want all of my honest debts paid. The balance of my estate devided as I have so willed in my past will. I do not want my estate to go into any Court, except to have my will probated. It is not necessary for any court to know, the amount of my estate. I want my heirs to devide and settle up my estate among themselves, independent of Court. My family can choose the third person to devide it, among my heirs. I have made what I have for my family, and I want them to have it, without any Court costs. I would rather my estate to remain as a whole, until my youngest child, Attie, becomes twenty-five years old, the proceeds, devided among them.

Witness: E. N. Stewart     W. D. Horne''
      J. D. Guthrie.

In contending that the above quoted language created a fee tail estate in the children of the testator, i. e., in contending that the children received only a life estate with a contingent remainder over to their children, appellants cite Hughes, Guardian v. Edwards, 198 Ark. 673, 130 S. W. 2d 713, and Wilkins v. Wilkins, 212 Ark. 242, 206 S. W. 2d 26. The facts supporting the holdings in these cases are readily distinguishable from those in the case at bar, and are therefore not controlling. We do not set forth a comparison of these cases with the one before us in view of what shall be said later. Likewise we do not discuss appellants' contention that Ark. Stats. § 50-405 is controlling for the reason that it does not become applicable unless it is first determined that the will created a fee tail estate.

We agree with appellants in two admissions which they make in their brief. The first is that there is a well established rule that the intentions of the testator, as it is gathered from the entire will, should govern. The second is that the words "To my children one and all I entale them property . . .", used in the will, are not alone sufficient to create an estate tail.

Let us then consider the language of the will [and codicil] to try and determine the intent of the testator. We think there are several things in the language used, when considered separately and together, which show very clearly the testator's intent was that his children should take a fee simple title.

The wording and spelling in the will which Dr. Horne himself wrote indicate that he was not familiar with or was not trying to use technically legal words or phraseology. This is mentioned because a typical case is presented where the intent must be gathered from a layman's viewpoint rather than from attaching significance to technical words. We have heretofore said that where certain technical words are used, in similar circumstances, which have a definite legal meaning they must prevail, otherwise property rights would be jeopardized. We do not have that situation here. The principal, if not the only, technical word found in this will was the word *"entale"*, and, as stated, appellants concede this is not controlling.

We entertain little doubt that Dr. Horne was expressing a desire that his children have exclusive and unfettered title to the real property left by him when he said he wanted them ". . . to devide and settle up my estate among themselves, independent of court." This interpretation of the testator's intent is confirmed by reference to the first part of his will which is not copied above [because it refers to lands not involved here]. There he gave two places to his wife [then living] and said ". . . at her death it be devided between my children." This being the only directive relative to those two parcels of land, it is not conceivable he meant thereby for his children to get a fee tail title. It is reasonable to

assume the testator meant to give the same force and effect to the word "devide" when he used it in connection with the lands here involved.

The will provides that if one of the children of Dr. Horne died without leaving children that portion of his estate should be divided equally among the survivors. This, also, is insufficient to create a fee tail even under the well established rule announced in 19 Am. Jur. 513 to the effect that no technical words of inheritance or procreation are necessary in a will to create a tail estate. The reason, as there stated, is that there must be some expression making the inheritance descendible to lineal, but not collateral, heirs. Here, by express words, the deceased child's part goes to collateral heirs. The only significance we attach to the part of the will under consideration here is that it was a reaffirmation of the testator's desire that his estate be divided *equally*.

In view of what has been said it is our opinion that the decree of the lower court should be sustained, and we so hold.

Affirmed.